# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

MATTHEW STEVENSON,

        Plaintiff,

vs.                                Case No. 5:11-cv-496-Oc-37PRL

SECOND CHANCE JAI ALAI, LLC,

        Defendant.

## ORDER

This cause is before the Court on the following:

1. Plaintiff's Second Amended Motion for Liquidated Damages and Front Pay (Doc. 64), filed February 20, 2013;

2. Defendant's Renewed Motion for Directed Verdict and Motion for New Trial and Response to Plaintiff's Second Amended Motion for Liquidated Damages (Doc. 70), filed March 25, 2013; and

3. Plaintiff's Response to Defendant's Renewed Motion for Directed Verdict and Motion for New Trial (Doc. 71), filed March 29, 2013.

Upon consideration, the Court hereby grants Plaintiff's motion for damages and denies Defendant's motions for directed verdict and new trial, for the reasons set forth below.

## BACKGROUND

Plaintiff, a poker dealer, was terminated from Defendant's employ in February 2011. (Doc. 25.) Plaintiff then filed this Fair Labor Standards Act (FLSA) retaliatory firing suit in August 2011. (Doc. 2.)

A jury trial was held in this matter on February 12 and 13, 2013. (Docs. 65–66.)

The jury found Defendant liable for retaliation and awarded Plaintiff $33,700 in economic damages. (Doc. 56.)

Plaintiff has moved for an award of liquidated damages and front pay. (Doc. 64.) In response, Defendant moved for directed verdict or a new trial. (Doc. 70.) Defendant also briefly asserted that Plaintiff was not entitled to liquidated damages, though it did not address the issue of front pay. (*Id.* at 14.) Plaintiff opposed. (Doc. 71.) This matter is now ripe for the Court's adjudication.

## STANDARDS

### I. Directed Verdict & New Trial

Federal Rule of Civil Procedure 50 provides that the Court may direct the entry of judgment as a matter of law after trial. On a motion for directed verdict, the Court "must draw all reasonable inferences in favor of the [non-movant], and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Such a motion should only be granted if the facts and inferences point "so overwhelmingly in favor" of the movant that a reasonable jury could not arrive at a verdict in favor of the non-movant. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1448 (11th Cir. 1991).

Federal Rule of Civil Procedure 59 provides that the Court may alternatively grant a new trial. Unlike a motion for directed verdict, on a motion for new trial, the Court may consider the credibility of the witnesses and weigh the evidence. *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982). A motion for new trial should only be granted if the verdict was against the great weight of the evidence. *Id.* The granting of such a motion is discretionary. *Id.*

## II. Damages

An employer who violates the retaliatory firing provision of the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This is a flexible standard, and courts "have to exercise some creativity in awarding relief in retaliation cases." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 937 (11th Cir. 2000).

### a. Liquidated Damages

The granting of liquidated damages is discretionary in retaliation cases. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1241 (11th Cir. 2013) (holding that unlike the mandatory provision of liquidated damages absent good faith in overtime and minimum wage cases, such damages are committed to the wide discretion of the courts in retaliation cases). While the liquidated damages provision is generally intended to provide compensatory relief to plaintiffs, it also has a deterrent effect on defendants. *Snapp*, 208 F.3d at 934–35 & n.13. Liquidated damages may therefore be appropriate where the defendant's actions are particularly egregious. *See, e.g.*, *Leon v. M.I. Quality Lawn Maint., Inc.*, No. 10-20506-CIV, 2013 WL 773475, at *9–10 (S.D. Fla. Feb. 28, 2013) (applying *Moore* and finding liquidated damages appropriate to effectuate the purposes of the FLSA where the defendant's attitude at trial demonstrated an intent to sanction employees for complaining about their rights).

### b. Front Pay

"In deciding whether to award front pay, rather than reinstatement, courts look to whether discord and antagonism between the parties would render reinstatement

ineffective as a make-whole remedy." *EEOC v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000); *see also Leon*, 2013 WL 773475, at *10. "[W]hen reinstatement is infeasible [in an FLSA retaliation case], the plaintiff is free to seek in lieu of that remedy an award of 'front pay.'" *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995) (Posner, C.J.). "Since reinstatement and double damages are normally awarded in the same case, and front pay is a substitute for reinstatement, there is no rule against awarding both double damages and front pay in the same case." *Id.* at 1232; *see also Moore*, 708 F.3d at 1241 (noting the discretionary nature of front pay). However, "the judge must guard against being overly generous in computing front pay, lest the result be a total award greater than the statute contemplates." *Id.*; *see also Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346–47 (M.D. Fla. 1999) (citing *Avitia*).

In calculating front pay, courts generally look to: (1) the length of time that the employee would have worked for the former employer but for the retaliation; and (2) the difference between what the employee would have earned from the former employer and what the employee earns or can expect to earn from his new employer. *See, e.g.*, *Warren v. Cnty. Comm'n of Lawrence Cnty.*, 826 F. Supp. 2d 1299, 1313 (N.D. Ala. 2011). Mitigation of damages is also a factor in determining whether front pay is appropriate. *Leon*, 2013 WL 773475, at *12; *see also Reiner v. Family Ford, Inc.*, 146 F. Supp. 2d 1279, 1286–87 (M.D. Fla. 2001).

## DISCUSSION

### I. Directed Verdict & New Trial

Defendant argues that it is entitled to a directed verdict because Plaintiff failed to submit sufficient evidence that he engaged in statutorily protected activity and that he had an objectively reasonable belief that he would not be paid for failing to use the time

4

clock. (Doc. 70, pp. 2, 7–10.) However, Plaintiff testified that he complained to his employers both orally and in writing on three separate occasions before he was fired.[1] (Doc. 65, Tr. I, 31:7–36:18; Doc. 66, Tr. II, 16:9–18:20.) He also testified that his paychecks were actually shorted. (Doc. 65, Tr. I, 34:13–20.) Furthermore, Mr. Matthews, Defendant's President, stated in an affidavit that Plaintiff was warned that he would not be paid if he did not use the time clock. (*Id.* at 17:13–18:14 (impeaching Mr. Matthews' credibility at trial with the prior inconsistent statement in his affidavit).) Taken together, this testimony was a sufficient basis upon which a reasonable jury could conclude that Plaintiff in good faith asserted objectively reasonable complaints of unlawful pay practices. *See EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (holding that the statutorily protected activity provision is to be construed broadly).

---

[1] Defendant submits that Plaintiff's complaints were not sufficiently clear to put it on notice that he was complaining of his rights under the FLSA. (Doc. 70, p. 6.) Defendant appears to read *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), to hold that in order to engage in a statutorily protected activity, a plaintiff must tell his employer, "You are in violation of the Fair Labor Standards Act." (*See* Doc. 70, p. 7.) *Kasten* is not so illogically narrow, however: it actually held that an oral complaint suffices to constitute statutorily protected activity. 131 S. Ct. at 1329. In that case, the employee "raised a concern" that his employer's actions were "illegal" and that he "was thinking about starting a lawsuit." *Id.* at 1330.

In the instant case, Plaintiff testified, "I was approached by [my supervisor] at a table, and he told me that . . . [i]f I didn't start using the time clock, I wasn't going to get paid for my hours. And I told him—I said, They can't do that. That's illegal." (Doc. 65, Tr. I, 31:7–12.) After a second confrontation, Plaintiff testified, "I said that was illegal, and if you did that, I would seek legal action." (*Id.* at 32:21–22.) Drawing the inferences from this testimony in the light most favorable to Plaintiff, the Court finds that these complaints adequately put Defendant on notice that Plaintiff was asserting his rights under the FLSA. *See, e.g.*, *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992) (holding that an employee's complaint that her employer was "breaking some sort of law" was enough); *see also Snapp*, 208 F.3d at 939 (noting that "the FLSA is remedial and humanitarian in purpose and that it must not be interpreted . . . in a narrow, grudging manner" (citation and internal quotation marks omitted) (alteration in original)).

Defendant also argues that Plaintiff failed to submit sufficient evidence that his complaints were the cause of his termination. (Doc. 70, p. 2.) On the contrary, the evidence demonstrated that he complained in January 2011, early February 2011, and then again in late February 2011; he was fired immediately after making the third complaint. (Doc. 65, Tr. I, 33:6–12, 36:2–18; Doc. 66, Tr. II, 16:9–18:25.) This close temporal proximity suffices to establish causation.[2] *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that a seven-week period of time between complaint and termination was "sufficiently proximate to create a causal nexus"); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (holding that a one-month period of time between complaint and termination "belies any assertion by the defendant that the plaintiff failed to prove causation"). Reasonable jurors could conclude, based upon this evidence, that Plaintiff's firing was causally related to Plaintiff's complaints and that he would not have been dismissed otherwise.

Considering the entire record, and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that sufficient evidence was adduced at trial

---

[2] Defendant also contends that Mr. Matthews, the ultimate decisionmaker, was not aware that Plaintiff had made complaints prior to his termination and thus that the termination could not have been causally related thereto. (Doc. 70, p. 12.) However, on Defendant's directed verdict motion at trial, Defendant made no argument that Mr. Matthews was unaware of Plaintiff's complaints. (*See* Doc. 66, Tr. II, 94:3–5.) Therefore, the Court considers this argument waived on this renewed motion for directed verdict.

Even if the Court were to consider this argument, the Court would find that there was sufficient evidence to infer that Mr. Matthews was made aware of Plaintiff's complaints prior to his termination, as: (1) Plaintiff testified that he complained to Mr. Coscarat (Doc. 65, Tr. I, 32:4); (2) Mr. Coscarat testified that he would take any complaints immediately to Mr. Matthews (Doc. 66, 49:9–11); and (3) Mr. Matthews testified that he had spoken to both of Plaintiff's supervisors and was aware that Plaintiff had not been punching in with the time clock (*id.* at 76:2–7, 88:11–12, 88:16–17). This chain of events, drawing the inferences therefrom in the light most favorable to Plaintiff, establish that Mr. Matthews was aware of Plaintiff's complaints. Nevertheless, the Court considers this argument waived.

to permit a reasonable jury to find in Plaintiff's favor. The evidence did not point so overwhelmingly in favor of Defendant that submitting the case to the jury was improper. Therefore, Defendant's renewed motion for a directed verdict is due to be denied.

Defendant alternatively moves for a new trial, arguing that the great weight of the evidence was against the jury's verdict. (Doc. 70, pp. 2–3.) Defendant submits that Plaintiff was "terminated for a legitimate, non-retaliatory reason" and that Plaintiff did not rebut that showing by demonstrating that Defendant's reason was pretextual. (*Id.* at 13.)

On the contrary, the evidence adduced at trial demonstrated that nobody could quite agree on the precise reason that Plaintiff was fired. Various reasons for Plaintiff's termination were given: watching too much television while dealing, slowing down the games, general lack of professionalism, showing up to work inappropriately dressed, disciplinary reasons, not punching in with the time clock, wearing his headphones during an employee meeting, and generally just acting as a "cancer" in the room and causing "disruption." (Doc. 65, Tr. I, 20:7–11; Doc. 66, Tr. II, 39:8, 42:16–43:1, 45:19–46:11, 76:10–77:5, 88:11–12.) However, at the time he was fired, Plaintiff was told that he did not do anything wrong and was not a bad employee, but that it just was not "going to work out." (*Id.* at 13:4–12.) Indeed, his termination letter listed the reason for his termination not as "Disciplinary," but rather as "Other. Does not work out." (Doc. 71-2.)

The Court finds that all of these proffered conflicting reasons establish that Defendant did not actually have a legitimate reason for firing Plaintiff. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (noting that "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons" support a finding of pretextuality). In particular, the fact

7

that Plaintiff's supervisor Mr. Coscarat and Defendant's President Mr. Matthews[3] could not agree on why Plaintiff was fired is quite telling.[4] *See Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence . . . may be quite persuasive."); *see also Mock v. Bell Helicopter Textron, Inc.*, 196 F. App'x 773, 774 (11th Cir. 2006) (finding that failure to give a precise reason for firing at the time of termination lent a suggestion of pretextuality). Defendant's inability to set forth a coherent reason for Plaintiff's termination, taken together with Plaintiff's consistent

---

[3] Defendant submits that Mr. Matthews, the ultimate decisionmaker, was unaware that Plaintiff had complained. (Doc. 70, p. 13.) A plaintiff must "generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). The Court notes that because this argument was not raised at trial, the testimony was not entirely clear as to whether Mr. Coscarat was a relevant decisionmaker. It was undisputed that Mr. Coscarat actually did the firing and filled out the termination form (Doc. 65, Tr. I, 36:10–18; Doc. 66, Tr. II, 39:5–6 ("Q. Do you remember—did you fire Matt Stevenson? A. Yes."), 42:7–11), yet Mr. Matthews asserted that he is the only one with the power to terminate (Doc. 66, Tr. II, 74:21–25). If Mr. Coscarat was a relevant decisionmaker, he was clearly aware that Plaintiff complained. (*See* Doc. 65, Tr. I, 32:4.) Furthermore, even if Mr. Matthews was the only relevant decisionmaker, which was not definitively established, the Court also finds that the evidence sufficiently demonstrated that he was aware of Plaintiff's complaints. *See supra* note 2.

[4] Defendant contends that Mr. Coscarat was not the relevant decisionmaker for the purposes of firing Plaintiff, *see supra* note 3, but the Court finds this consideration irrelevant. Standing alone, Mr. Coscarat's proffered reasons for firing Plaintiff were internally inconsistent. (*See* Doc. 66, Tr. II, 42:13–43:1.) Mr. Coscarat also suffered from severe lack of recall, and the Court found his testimony generally not credible. (*See id.* at 40:11–42:25.) Similarly, Mr. Matthews' proferred reasons for firing Plaintiff were nebulous and internally inconsistent. (*Id.* at 76:24–77:5 ("So at that point I was like—you know, that kind of cancer—I mean, it just—it just grows in a room when you have that kind of disruption. And you have players and you have—I mean, we have our dealers and they all start talking. It just—it doesn't make—it's not conducive for a good business strategy."), 87:10–88:17 (in which Mr. Matthews seemed confused that "the time card stuff" was not included as a reason that Plaintiff was fired).) The Court also found Mr. Matthews utterly incredible as a witness. (*See* Doc. 65, Tr. I, 17:13–18:24 ("Q. Is that statement true? A. No, it's not. Q. But you signed this document under penalties of perjury, didn't you? A. I signed it, yes.").) Thus, whether Mr. Coscarat or Mr. Matthews (or both) was the relevant decisionmaker, their rationales were each highly suspect; taken together, such suspicion is even further compounded.

assertions that his complaints were the reason he was fired, substantially supports a finding that Plaintiff would not have been fired but for his complaints.

Viewing the record as a whole, the Court finds that the great weight of the evidence supported a finding of liability. No injustice will be done by allowing the verdict to stand. Therefore, Defendant's motion for a new trial is due to be denied.

## II.     Damages

Having found that the jury's verdict should not be disturbed, the Court now turns to the calculation of Plaintiff's damages. Plaintiff seeks both liquidated damages and front pay. (Doc. 64.) Defendant did not address Plaintiff's damages arguments; it merely pointed out that the award of liquidated damages was discretionary and was silent as to front pay. (Doc. 70, p. 14.)

### a.     Liquidated Damages

The jury's verdict clearly established that Plaintiff engaged in protected activity and that Defendant fired Plaintiff in retaliation for that activity. (Doc. 56.) Accordingly, Defendant did not sufficiently demonstrate that it acted in good faith. In fact, the Court found that Mr. Matthews' testimony was not credible, and a number of his statements at trial suggest to the Court that Defendant intended to circumvent the FLSA and to punish its employees for attempting to enforce their rights under the FLSA. (*See, e.g.*, Doc. 65, Tr. I, 9:15 ("If he worked those hours, we *made an effort* to pay him." (emphasis added)), 11:20 ("I'm *pretty sure* that we [paid employees for required employee meetings]." (emphasis added)), 17:13–18:14 (impeaching Mr. Matthews' credibility with his prior inconsistent statement when he denied warning Plaintiff that he would not be paid if he did not use the time clock).)

Though liquidated damages are not mandatory absent good faith in the

retaliation context, *see Moore*, 708 F.3d at 1241, the Court nevertheless considers the absence of good faith as a factor in determining whether liquidated damages are appropriate. In this case, where the evidence established that Defendant's conduct intentionally flew in the face of the FLSA, the Court finds that an award of liquidated damages would further the purposes of the FLSA by compensating Plaintiff for the harm he suffered in attempting to assert his rights and by deterring Defendant from engaging in such conduct in the future. *See Leon*, 2013 WL 773475, at *9–10 (liquidated damages appropriate where the defendant's attitude showed intent to sanction employees for complaints about their rights); *see also Snapp*, 208 F.3d at 935 n.13.

Accordingly, Plaintiff's motion for liquidated damages is due to be granted. Per 29 U.S.C. § 216(b), the Court finds that, in its discretion, an amount of liquidated damages equal to the jury's verdict is appropriate to effectuate the purposes of the FLSA in this case. Therefore, Plaintiff is awarded $33,700 in liquidated damages.

### b. Front Pay

Plaintiff also seeks front pay in the amount of $156,000, or $300 per week for ten years. (Doc. 64, p. 7.) At the outset, the Court notes that reinstatement would be inappropriate in this case due to the demonstrated ill will and hostility between Plaintiff and Defendant. *See W&O*, 213 F.3d at 619. Therefore, the Court will consider whether front pay is appropriate in lieu of reinstatement on these facts.

Plaintiff submits that he would have continued to work for Defendant for the next ten years. (Doc. 64, p. 7.) However, the Court is unconvinced that Plaintiff would have continued in Defendant's employ long-term. Instead, the Court estimates a more

conservative two years,[5] given the fact that he was an hourly rather than a salaried employee, that he is rather young[6] and may transition into new employment,[7] and that opportunities for employment as a poker dealer are limited. (*See id.* at 6–7.)

Plaintiff also testified that he spent four months looking for work and is now making approximately $300 to $400 less per week in his new job as a poker dealer in Daytona Beach. (Doc. 65, Tr. I, 39:1–8.) Defendant did not contest this number and, in fact, said nothing at all about front pay in its response. Therefore, the Court accepts Plaintiff's representation that he makes $300 less per week in his new job. The Court also finds that Plaintiff commendably mitigated his damages by finding new comparable employment soon after his termination.

Thus, the Court finds it appropriate to award Plaintiff a limited amount of front pay—$300 per week for two years (or 104 weeks), totaling $31,200. The Court finds this amount necessary to smooth Plaintiff's transition into his new employment and to effectuate the purposes of the FLSA by making him whole. Such a limited amount does not overcompensate Plaintiff in light of the liquidated damages award, *see Avitia*, 49 F.3d at 1232, but rather puts him in a position comparable to where he would have been had Defendant not retaliated against him. *See Snapp*, 208 F.3d at 937 (noting that some creative combination of types of relief may be needed to fully compensate

---

[5] The Court notes that two years is the length of time posited by Plaintiff's pretrial statement (Doc. 38, p. 6), though the Court does not consider this dispositive.

[6] *See, e.g.*, *Sellers v. Mineta*, 358 F.3d 1058, 1066 (8th Cir. 2004) (noting that the young age of a plaintiff may support a court's limitation on the length of time for front pay).

[7] There was also some evidence adduced at trial which suggested that Plaintiff did not intend to continue long in Defendant's employ, though the Court did not specifically credit this testimony. (Doc. 66, Tr. II, 103:3–4.)

plaintiffs in retaliation cases, depending on the facts of each case). Accordingly, Plaintiff's motion for front pay is due to be granted, and he shall be awarded $31,200 in front pay.

In sum, the Court finds that judgment is due to be granted in the amount of $98,600, encompassing the jury's award of $33,700, liquidated damages in the amount of $33,700, and front pay in the amount of $31,200.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Renewed Motion for Directed Verdict and Motion for New Trial and Response to Plaintiff's Second Amended Motion for Liquidated Damages (Doc. 70) is **DENIED**.

2. Plaintiff's Second Amended Motion for Liquidated Damages and Front Pay (Doc. 64) is **GRANTED**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff in the total amount of $98,600.00.

    a. Judgment on the jury's award of $33,700.00 shall be deemed, *nunc pro tunc*, as entered on the date of the jury's verdict, February 13, 2013. Interest on that amount shall be calculated as of that date.[8]

    b. Judgment on the equitable damages of $64,900.00 awarded by this Order shall be deemed entered as of the date of the judgment.

4. The Court **RESERVES** jurisdiction to consider taxation of costs and fees

---

[8] *See, e.g.*, *Burney v. Intermare K.G.*, 717 F. Supp. 793, 798–99 (M.D. Fla. 1988), *aff'd* 886 F.2d 1323 (11th Cir. 1989) (holding that "when, as here, a delay in the entry of judgment occurs through no fault of plaintiff," the interest should be calculated back to "the date of the original jury verdict").

upon timely motion, pursuant to Local Rule 4.18.

**DONE AND ORDERED** in Chambers in Ocala, Florida, on April 2, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record